All rise, the United States Court of Appeals for Federal Service is now open and in session. For God's sake, the United States and its honorable court. Good afternoon. The first case is 06-5014, Tritec Technologies v. the United States. Mr. Techie? Yes, T.C., Your Honor. T.C. Thank you. May it please the Court, Counsel. My name is Frederick T.C., Counsel of Record for Appellant Tritec Technologies, Incorporated, and we are here today to address primarily the sole grounds for the entry of summary judgment against Tritec by the lower court on the issue of infringement. By way of a brief background, this case is about a pioneering invention involving a high-speed sorting of large pieces of mail referred to in the industry as flats. Jim Malatesta of Tritec, a man with numerous mail-sorting patents, invented this revolutionary machine that, for the first time, could sort approximately 17,000 pieces of mail an hour. Nothing in the prior art remotely suggested or disclosed this novel and groundbreaking technology, which has led to almost $800 million in sales by the defendant. There are two components of this machine that are an issue for the purposes of this appeal. One is the feed conveyor station or section, which is where the items of mail are placed on a moving belt with a paddle at the back end and fed into what the patent describes as a singulation station. What we're here to talk about today is the claimed relationship between the feed conveyor section and the singulation station, which includes in the patent an initial hold means, which grabs the last item of mail coming down the feed conveyor section, and a transfer means, which takes that item of mail and sends it downstream to what the patent describes as a delivery station. The Postal Service bought one machine from Tritec. There's no dispute that the defendants had access to Tritec's technology and machine and made three insignificant changes. In accordance with the teachings of the 922 patent, they adjusted the paddle, which they claim adjusts the angle of the mail on the horizontal feed belt. They doubled the width of the horizontal feed belt on which the mail sits, and they added a two-inch trough to a 300-foot-long machine. Thereafter, at the defendant's request, the lower court grafted unnecessary claim limitations into the claim terms at issue. Now, the sole reason that the lower court entered summary judgment in this case was it found that the accused transfer of means was not juxtaposed the entire remainder of the downstream discharge end as the mail came down. And in so doing, the lower court properly defined transfer of means. It properly defined the term juxtaposed, but it improperly defined the term remainder. Regardless of the improper determination or claim construction of the term remainder, Tritec summary judgment should not have been entered against Tritec because the closed device still has a transfer of means which still extends the entire remainder. Why do you challenge the court's construction of remainder? Why do I challenge? Because, Your Honor, the lower court grafted an unnecessary limitation that the remainder had to be the entire remainder of the downstream discharge end. There's an initial hold means across the end of this belt. Then the lower court found that the transfer of means had to extend the entire remainder of that linear distance. What else could remainder mean other than the rest? Well, it doesn't mean the entire rest. The claim only required that it be some part of a rest. And the specification shows an initial hold means and a transfer of means which don't extend the entire width of the belt. There's a small sliver. But the claim doesn't say, you know, a portion of the remainder or a part of the remainder. It says the remainder. Well, it says a remainder. It says a remainder. I'm sorry, Your Honor? It says a remainder. A remainder, which was dealt with on the 112 issue during the prosecution history. But there's no reason to limit it. That sets where the transfer of means. There's no reason. There was nothing in the prior art that dictated that the transfer of means had to extend the entire remainder. There was no statement to that effect in the specification. And, in fact, the specification showed a transfer of means that doesn't extend the entire remainder. So the lower court, there was no reason. There were definitions of remainder that were used that were presented to the lower court that did not include the rest. There were dictionary definitions that included something that is left over after other parts have been taken away or the rest. And there were other definitions that included not taken, used, or gone, left over. There was no reason why it had to be the entire remainder. Regardless, Your Honor, given the definition of transfer of means, which the lower court properly construed in accordance with the specification to include the belt, motor, and pulleys, that device, the transfer of means of the accused device, extends the entire length of the downstream discharge mend, even given the improper limitation of the term remainder. In fact, at column 4, lines 61 through 67 of the patent, it defines the transfer of means as including the elements that I've indicated. In addition, there was extrinsic evidence in the case below, in the record below, of the defendant's documents which defined their simulation station or transfer of means as including all the elements that set forth in the specification. And although extrinsic evidence cannot contradict the intrinsic evidence, it was consistent with and supported it. Let me ask you a quick question here. Remind me, are the invalidity and unenforceability aspects of this case out of the case now? There were never any. They were not counterclaims? They may have been counterclaims, Your Honor. The lower court entered summary judgment on the grounds of infringement, and discovery had not been completed. I believe there were counterclaims or there were affirmative defenses of invalidity, but they were never briefed. I don't believe there was a motion on validity. Where are they? I'm sorry, Your Honor? Where do they stand at the moment? Well, TriTech Law, so... Well, I know you did. So those issues are not going to be... They're not going to be addressed before this court at this time unless there's a remand, and then they get worked out in discovery and there's a trial. Were there counterclaims or just affirmative defenses? Your Honor, I don't remember if there were counterclaims or affirmative defenses on the invalidity issue. The first basis for summary judgment by the lower court with respect to the transfer of means was that the lower court found that the motor of the accused device was too far away from the downstream discharge end to be considered juxtaposed. It's undisputed that that motor was approximately six inches away in a 300-foot machine. More importantly, the motor in the accused device, which is part of the transfer of means, was no further from the downstream discharge end than the drive motor 114 shown in Figure 3 of the patent. The second basis for summary judgment was that the transfer of means motor could not be juxtaposed to the downstream discharge end because there was a destacker plate. There was an element, a component in between the motor and the downstream discharge end. In connection with that, the lower court found that because of this intervening element, it could not be juxtaposed. But that's, again, inconsistent with the specification, which teaches that there's a first vacuum chamber 71, a second vacuum chamber 77, and the claims in the specification indicate that both the first and second vacuum chambers are juxtaposed. Yet a review of Figure 3 of the patent reveals that there is a roller 108 and a belt 102 in between those two vacuum chambers. Yet they're described as juxtaposed. As such, it was error for the lower court to find that the transfer of means in the accused device was not juxtaposed to the downstream discharge end. One of the issues before this court is the lower court's construction of the term vertical. The lower court found that vertical means must mean being in a position or direction perpendicular to the plane of the horizon, upright or plumb. The lower court specifically found that vertical meant perpendicular to the plane of the horizon. Now, there are a lot of examples of vertical before the lower court. For instance, I'm standing here vertically at the podium and I'm upright, but I'm certainly not perpendicular to the plane of the horizon. The lower court found this perpendicular limitation at the insistence of the defendants because the accused device stacks the male at approximately 100 degrees, 10 degrees off the directly perpendicular to the horizon. Now, that was an issue that I wondered about. Is it 100 or 110? The numbers 110 is used frequently in the record, and the number 100 creeps in at certain points, and I was left unclear as to just what we're dealing with here. When the litigation began, it was 110 degrees. Sometime during the course of the litigation, the defendants altered the configuration of the accused device to go from 110 to 100 degrees, and so it was both. It was 110, then it was 100. It was never directly perpendicular. There was nothing in the prior art that taught or suggested that male stacked directly perpendicular was a critical or important aspect of this invention. There was no express disclaimer. There was no statement discussion in the specification, and in fact, a review of the specification reveals that the paddle is adjustable, column 3, lines 37 to 38. That's the paddle that holds the male on the feed conveyor section. Those of ordinary skill in the art would recognize that an adjustable paddle is there to move or change the angle of the paddle, which, as the defendants claim, would change the angle of the male. Secondly, the specification, column 3, lines 44 through 45, indicates that the items of male are in a side-by-side relationship on their edges. And it further goes on to say, a few words later, that this vertical stack, referring to the side-by-side. So the specification uses the term vertical to refer to male that's stacked on its edge. The defendants contend that had Tritec wanted to claim a non-perpendicular orientation for the male, it could have used the term non-perpendicular, but Tritec did that. They used the term vertical, which would include directly perpendicular, slightly off the perpendicular, provided it was upright or erect, in accordance with the specification, as well as the ordinary definitions which were in front of the lower court. How would you decide that it's erect, other than by the angle? In other words, are you saying anything more than a 45 degree angle is erect? I mean, suppose you have a lot of flat male that's sitting at, let's say, a 30, 35 degree angle. Well, interestingly, Your Honor, and there was testimony to this below, that male could be stacked horizontally, which is always thought on its face, historically. Erect really means, technically, I guess, anything above 45 degrees would be erect. That's your definition of vertical for purposes of this patent? Well, it would be upright or erect. Well, you're going to have a dispute, presumably, maybe not in this case, but at some point in which somebody is going to say, well, this isn't 110 degrees, it's 150 degrees, or it's 135 degrees. Is that vertical? It may be. It depends on the art. You have a term, and we need to try to define the term, preferably with some precision. And you say, well, we know that 110 is, well, how do you know? Well, because we say that's erect. Well, okay, what's not erect? And you say, well, I don't know, something that's flat is not erect. Well, that's true. What's the limit to the proposition that something is erect, is what I'm asking. It would be at that point where those of ordinary skill in the art no longer deem the item to be on its edge in a side-by-side configuration as described in the specification of the patent. Whether that's 45 degrees, or it's 60 degrees, or 70 degrees, would change, would be relative to the art. I will say that it would be. To me, your definition could read on something that was 30 degrees. No, because that would not be erect. That would be 30 degrees would be less than 45, which I would say would be closer to the horizontal than it would be to the vertical. Your critical factor is less than 45 degrees, or greater than 45 degrees? Greater than 45 degrees. And, in fact, Your Honor, there was documents below the lower court, and they're in the joint appendix at page 5600, where the defendants defined their mail on their feed conveyor stacked at 110 degrees as vertical. These were technical documents. They weren't marketing documents. They weren't sales brochure. They were technical documents from people of ordinary skill in the art. The last element that I want to talk about is downstream discharge end. The defendants convinced the lower court to grant the unnecessary limitation that downstream discharge end had to be, the downstream most item of mail had to be that item of mail which is on top of the horizontal feed belt. And the purpose for doing that was to limit the claims so that the initial hold means and transfer means would be directly above the horizontal feed belt. You want to save your rebuttal? Yes, I do, Your Honor. I'll save one minute of it, or directly above. But the claims only require that the initial hold means and the transfer means be juxtaposed. And as I spoke of earlier, juxtaposed contemplates, although it doesn't require a gap, and it contemplates, although it doesn't require that there be some item in between. And when the court drafted the claim downstream most item of mail so as to include the limitation that it be that item of mail on the horizontal feed belt, that was an unnecessary limitation which overly, narrowly construed that term. For those reasons, we ask that the judgment be vacated and the case be remanded. Before you start, I just wanted to, I guess it's not your brief, it's the other appellee's brief. But it says that although pleaded invalidity on the first body, it doesn't brief and so forth. Are those still pending or have they been, are they out of the case? They are still pending, Your Honor. Why do we have a final order? Because they were, discovery and briefing on those was stayed because it is not a counterclaim as I believe it is an affirmative defense. It's an affirmative defense. As I believe it's an affirmative defense, it's not in the joint appendix, right? I know it's not. You believe? My recollection, Your Honor, is it's affirmative defense. I know for sure it is in the case because that issue in front of Judge Damage was put on hold because both sides thought infringement could perhaps be disposed of and deal with everything. So I take it your client did not file a counterclaim? As I, my recollection is we did not. With the best certainty I can give you not having, we've obviously looked in the time I've had while Mr. Tesey was arguing to see if we had the answer from the third-party defendants or the government here in the court room. I do not believe that we do. If somebody finds it in the interim, I'm sure they'll let me know so I can answer that question. May it please the court, Greg Locascio on behalf of the United States of America as the defendant as well as both third-party defendants, Northrop Grumman Corporation and Siemens Domatic Corporation, now known as Siemens Energy and Automation. The court of federal claims grant summary judgment that the government's postal sorter, the AFSM-100, does not infringe the 922 patent as proper and should be affirmed. That affirmance can come solely on the basis of the transfer means that's set forth and was the bulk of Mr. Tesey's argument. There are two other arguments raised in the briefing that could support an affirmance, the stack-maintaining mechanism and the downstream-most item of mail. Let me start with the transfer means because I think that's where the bulk of the questions can come from and an affirmance would be proper on that grounds. The transfer means requires a transfer means extending juxtaposed across the remainder of the discharge end of the feed belt. That claim is language is not means plus function language. The claim 1 and claim 4 both describe sufficient structure to perform the function, that function being for removing the downstream-most item of mail away from said initial hold means and conveying the downstream-most item of mail to the delivery station. No one disputed. Both parties agreed. And the Court of Federal Claims found the construction of transfer means to be the second vacuum chamber and the transport belt. There was no argument made that the construction of that term required motors, pulleys, drive belts, or a destacker plate as part of the transfer means. That's because the corresponding structure need perform the recited function. It does not need to enable that function. Otherwise, you'd get to the where do we stop? Is it the motor? Is it the power cord? Where does it end? Under Claim 13, that construction is actually instructive on this. Claim 13 had no structure for what the transfer means was. And both parties agreed and the Court below found that the structure to be read in to the transfer means in Claim 13 was, again, a vacuum chamber and a belt that surrounded it, the transport belt. Again, no motors, no pulleys, no drive belts, no destacker plate. Tritec does not challenge the construction of the transfer means. There are two other issues of construction on the transfer means limitation. They certainly challenge it here. I mean, this morning the argument was made in the briefs as well. And when you say they don't challenge it, you mean they didn't challenge it in the trial court? They do not challenge the claim construction. And Mr. Tritec began his argument by saying the claim construction of transfer means is correct. And they didn't challenge it below. Well, I understand him now to be saying that the, I mean, it depends, I guess, on what you call the claim construction, but to be saying that within the meaning of transfer means is the motor and the rest of the machinery that's behind the end plate. And in his brief as well. As I read the brief, I don't believe it's a challenge on the claim construction of transfer means. It was certainly never raised below, and it was never argued below. It either breaks one of two ways, Judge Price. It either breaks as the transfer means has to include the motor in the accused product. That begs the issue of from a claim construction standpoint, was there sufficient structure to perform the function of the transfer means? Everyone said there was. And now the question comes in on an infringement analysis. I don't know that it's a challenge to the construction, but as a question of the infringement analysis, can an LP, a component of the accused product, be incorporated into what the transfer means is? That actually does not perform the function of the transfer means. The defendants and third party defendants contend you cannot. The proper place to look in the accused product is, again, what portions of the accused product perform that function. For instance, the including language, which much of the battle is over. Including, I agree, and I certainly grant that. It doesn't mean those are the only two things you can have in the accused product, a vacuum and a belt. But other items that you're going to read into transfer means when you analyze the accused product must perform the function of the transfer means. If there was some latch that grabbed the mail when it sucked onto the belt, or there was some stick-em-like product on the belt, another piece of the accused product, that could be part of the transfer means. The motor, that's also in the patent itself, but is not part of the structure necessary to perform that function, cannot be part of the component or structure you look at in the accused device to interpret transfer means. I know this, I think one of the briefs characterized this as a house that Jack built type question, and of course that's right, but that doesn't necessarily mean it's an easy question to resolve. What is the principled basis for saying that the motor does not perform in any way or contribute to the performance of the function? The argument is that the motor itself enables the curtain and structure, the vacuum and the belt, to perform the stated function. That's the language from ASSIST. The TI group deals with it also. Both of those deal with it on the construction side, not so much on the infringement side. And I don't believe there's clear guidance in a situation where it's either means plus function language and the structure is read in to exclude some other enabling components, or there's sufficient structure set forth in the claim itself, which is the case here. And then there's some enabling component, for instance the motor. The motor itself does not remove the items of mail. It doesn't ever come in contact with those. It, no differently than perhaps the power cord or any other piece downstream, enables that belt or the pump, for instance. If you're going to count the motor, if that was, for instance, required to remove the items of mail, which I don't believe it is, then the pump powers the vacuum, and then we can just keep taking that step all the way back to the power company. So the question, as I see it, is is it acting on, is it removing the items of mail and delivering them? That is the function in the transfer means that must be affected. Now, this issue is certainly perhaps one of the more interesting academic issues here, but it ultimately doesn't matter for you to affirm, because even including the motor, there would be no infringement, literally, of the transfer means. And Judge Damage below addressed that, albeit he didn't need to get to it on Claims 1 and 4. If you look at the Claim 13 analysis, which has the same structure, in that situation, Judge Damage specifically says, assuming, even if, is the language in the summary judgment decision, the motors, the pulleys, and everything else was part of the transfer means. The court below did not find that those elements were part of the transfer means. The language on that, I'll grant you, is not as clear as it could be. When you look to the analysis, it says even if, or the benefit of taking the plaintiff's arguments, be they what they are, even then, it would not infringe because of the other locational limitations, juxtaposed and remainder. The argument that we're going to look at the motor and look at things on the, perhaps the non-business side of this device, behind the distacker plate, and assess whether those meet the limitations of transfer means, even if you could read them into transfer means, they can never satisfy the requirement of juxtaposed across a remainder, because those require it to be juxtaposed to the discharger, i.e., the business side of the machine, which is what the specification shows and other intrinsic evidence, including the record and the prosecution history, all talk about it being juxtaposed and, indeed, you look at the preferred embodiment and anything else set forth in the specification. That's exactly where the transfer means is when it's juxtaposed and extends across the remainder. Is there any way in which this transfer means would operate to perform the functions recited in the absence of the motor? I don't think it could be enabled if you did not have a motor. Well, let's not be cute with words. Just give me a direct answer. Is there any way in which the transfer means would function as called for in the claims without the motor? I don't believe the belt, Your Honor, could turn without a motor. There could be other ways of powering a belt, but ultimately a belt standing on its own will not move anything. So why is it the motor then a necessary part of the transfer means? For the same reason that the motor would need to be powered by something, and it's a question of degree and where do you end, and the guidance we have from the court on this is it must be necessary to perform that function, but enablement of that is not something we're going to read in if we're looking at it for the sufficient or necessary structure or in this instance on the infringement side of things. And I agree it is a question that is not absolutely clear. I think the right answer, I've not found a Federal Circuit case that hits this issue of downstream, not to use that term because it's used in the patent, but where do you end? Where is the line drawn? And I think the way it has to be done is look at the function, and as the drafter set forth in this patent, it removes an item of mail and moves it downstream, and that's done by a belt, that's done by a vacuum chamber, that's what's set forth in the claim, and even when the spec or the prosecution history talk about transfer means, they never talk about it as including a motor, and that argument in fact was not even made from a construction standpoint because I think at that point the argument would have had to be made that this would be a means plus function claim. If the motor is necessary, well then claim one would not state sufficient structure, and then when we got to claim 13, we would have had arguments to bring a motor in, and nobody looked at it that way, not TriTech nor the defendants. Now, but again... I mean that would be the normal way to look at a means plus function clause. You're looking to identify the function, and then you look to the structure in the specification that corresponds and performs that function. You're looking for all of the pieces, all of the components, structural components. You're not looking for necessarily the source of electricity, but you're looking for, you know, motors, pulleys, gears, levers, et cetera. There's guidance on this issue, Judge Wyndham. It's TI Group Automotive and it's assist technologies. Both of those cases deal with on the claim construction side, this situation, and there are pieces that are performed or you could argue enabling or otherwise involved with that function that are not included. The claim language in TI Group talked about a nozzle and a venturi tube, and that was viewed to be a pumping means. There were other parts, check valves, connecting tubes, jet blocks. They were not part of the pumping means in that case, and TI Group talks about it in a similar way. Ultimately, the discharge or the destacking plate, which the court below found was not part of the transfer means, it had never been argued, not on the briefs, not in any claim chart, and the court below found it to have been waived. That, unlike claim construction, would be subject to an abusive discretion standard. The waiver of the destacker plate as being part of the transfer means, because it's not in the transfer means, it precludes the motor from ever being juxtaposed to the discharge end, and that's the claim 13 analysis Judge Damage went through because he looked at it, even if you count the motor. So while I don't think the motor is part of the transfer means, this court can't affirm even if the motor was part of the transfer means because the motor is on the wrong side of the machine, separated by the destacker plate, and as was found below, could not, by any reasonable fact finder, be juxtaposed to the discharge end. And even then, you count the motor, when you read out and ignore juxtaposed, it still would have to satisfy the remainder limitation. It has to be across the remainder of the discharge end. I think it's 5 1⁄2 inches. If you count the motor, it's 10 inches. The width of the feed belt is more than 12 inches.  Even if you count everything else. Now, when we then get to the question of doctrine of equivalence, the court found below that there could not be an argument under the doctrine of equivalence that 10 inches is the equivalent of 12 when you've claimed it as the remainder. And I agree, I think the court found below, remainder means the rest. The ordinary meaning and everyone's definition of remainder, it is a specific term. If I have nine apples and you take five, the remainder is four. It is never two, two or more, three or more. Remainder means the rest. And that's the meaning of remainder. That's how it's set forth in the specification. There are references. For instance, specification JA111, column 4, lines 14 to 16. The second vacuum chamber extends the remainder. All discussion during prosecution was the remainder. All of what is left, the rest. Only at the end, there were some 14 or so uses of the in the claim language that were rejected on antecedent basis grounds. They were all changed to a or an or it was removed entirely, including remainder. Changing it to a remainder did not, by any stretch of the imagination, now broaden this. And even then, you'd be vitiating the limitation if you read it under the doctrine of equivalence to try to fit this device under it. Your view, then, on the doctrine of equivalence is that anything other than the complete remainder would be vitiation? I do because I think complete remainder is surplusage. Mr. Teese, you talked about the entire remainder. I understand. But suppose you had the transfer means occupying all but 1 16th of an inch of the width of what is the D stacker plate. That certainly would sound to me as if it would be reasonable to conclude that that is an equivalent of the remainder, notwithstanding that the remainder has this kind of mathematical precision to it that we sometimes attach to in the vitiation setting. You would agree with that, right? 1 16th of an inch, it's the remainder for all practical purposes, right? Well, that's the rub, and that's the situation you can have in the Moore case. It's 47% and it says majority. Would most everyday people think, come on, isn't that really close to 50% or 1 16th of an inch different? And when you use terms like that and you claim it the way you do, a term that is, for instance, majority and minority cannot be that, others in the art have to act and rely on that language. And ultimately, what we learn from Moore and Sage Products and Zodiac is you cannot do that. So while I think we could all say, is it really fair? That's the way, that's the court's guidance on this. And more importantly, given this record, there are also statements made during prosecution specifically distinguishing the Takeda reference, again saying the remainder. And once you now have the language as the remainder, everything below is the remainder, and statements to address prior art of the remainder, I don't know that now, between that argument and the language itself, and vitiation, we can read that out. Because otherwise, we are, in effect, reading out through equivalence the fact that it should go the whole distance to the end. I don't think that's a more than sufficient answer. Thank you. Thank you. I'll be brief, Your Honor. Well, you're going to have a little more time now because that answer took a couple minutes. Thank you, Your Honor. First of all, with respect to remainder, the reference before was not a reference that showed an initial hold means and a transfer means, which extended part of the remainder, and TriTech needed to claim the entire remainder. Secondly, if this isn't a DOE case, if you look at the actual transfer means and initial hold means, all the defendants did was double the width of the belt. That's what they did. And when they doubled the width of the belt, that extends the width of the downstream discharge end. And if that's not a DOE case, I don't know what is. With respect to this issue on transfer means, during the claim construction process, and it's at page 19 through 22 of the lower court's opinion, there was really no dispute about what the word transfer means. The entire dispute centered around this issue about whether or not the transfer means had to extend the entire length of the downstream discharge end. And if you look at the claim construction opinion at 19 through 22, that was the dispute between the parties. The last thing is on this issue of transfer means. It's in our brief, the defendant's own documents, which define their destacker station, show the motor. The specification shows the motor as part of the transfer means. And they can clearly be juxtaposed for the reasons which I talked about above. And as noted in footnote 1 of our reply brief, the lower court agreed with the plaintiff that the transfer means of the accused device includes the belt, vacuum chamber, and drive motors. For those reasons, I respectfully request that the court vacate summary judgment, correct the issues on claim construction, and remand this case. Thank you.